IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA, *

Plaintiff, *

v. * Civil Action No. RDB-11-2961

KERNAN HOSPITAL, *

Defendant. *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Defendant Kernan Hospital has filed this Petition to Set Aside a civil investigative demand that the United States Government, the Plaintiff in this False Claims Act case,[1] served on Kernan Hospital on August 23, 2012. In an earlier Memorandum Opinion, this Court dismissed without prejudice the Government's original complaint for its failure to plead fraud with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *See* Mem. Op. 16-22, ECF No. 26. Now the Government has issued a civil investigative demand pursuant to 31 U.S.C. § 3733(a)(1). The Government contends that this civil investigative demand is necessary to cure the deficiencies in its original fraud allegations. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant Kernan Hospital's Petition to Set Aside Civil Investigative Demand (ECF No. 29) is GRANTED.

[1] 31 U.S.C. §§ 3729, *et seq.*

BACKGROUND

The facts of this case pertaining to the original complaint alleging violations under the False Claims Act are fully set forth in this Court's earlier Memorandum Opinion issued on July 30, 2012. Mem. Op. 2-7, ECF No. 26. On October 17, 2011, the Plaintiff United States Government ("the Government") filed a complaint against the Defendant Kernan Hospital ("Kernan" or "Defendant"), alleging that Kernan presented false claims to the Government. Specifically, the Government alleged that Kernan devised a scheme to increase its Medicare, Medicaid, and Tricare reimbursement by systematically "upcoding"[2] secondary diagnoses concerning malnutrition.

Before filing its complaint, the Government initiated an investigation into this alleged upcoding scheme that ultimately lasted three years. According to Kernan, the investigation began on June 3, 2008, when the Office of the Inspector General issued a subpoena (the "June 2008 subpoena") to Kernan, requesting documents—including patient records, employee files, coding personnel records, physician queries relating to malnutrition, internal documents relating to the hospital's coding system, training records for physicians and coding and billing personnel, the hospital's annual cost reports, and communications with the Health Services Cost Review Commission—related to the coding of malnutrition as a secondary diagnosis during a period from 2005 to 2007.[3] After the parties conferred on this

---

[2] "'Upcoding,' a common form of Medicare fraud, is the practice of billing Medicare for medical services or equipment designated under a code that is more expensive than what a patient actually needed or was provided." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 637 n.3 (6th Cir. 2003) (citing Bonnie Schreiber *et al.*, *Health Care Fraud*, 39 Am. Crim. L. Rev. 707, 750 n.331 (2002)).

[3] Def.'s Pet. to Set Aside 1, ECF No. 29; Def.'s Ex. 1, ECF No. 29-1. Kernan sets out facts pertaining to the Government's three-year investigation in its Petition to Set Aside Civil Investigative Demand. The Government does not refute these facts except to say that Kernan did

subpoena, the Government requested a more narrow production of 100 specifically identified medical records on March 4, 2009, *see* Def.'s Ex. 2, ECF No. 29-2, and Kernan complied with that request on April 6, 2009, *see* Def.'s Ex. 3, ECF No. 29-3, producing 15,686 pages. On April 20, 2009, the Government requested the coding summary sheets that corresponded to the 100 medical records, *see* Def.'s Ex. 4, ECF No. 29-4, and Kernan produced them on April 29, 2009, *see* Def.'s Ex. 5, ECF No. 29-5.

On May 18, 2011, more than two years after the Government's initial production requests, the Government asked Kernan to respond to the June 2008 subpoena. *See* Def.'s Ex. 6, ECF No. 29-6. On June 2, 2011, Kernan produced 1,709 pages of documents in response to the June 2008 subpoena. *See* Def.'s Ex. 7, ECF No. 29-7. Then on August 2, 2011, Kernan produced additional documents responsive to the June 2008 subpoena. *See* Def.'s Ex. 8, ECF No. 29-8. Kernan again supplemented its production of documents on September 29, 2011. *See* Def.'s Ex. 9, ECF No. 29-9. All told, Kernan produced 2,996 pages in response to the Government's June 2008 subpoena. Def.'s Pet. to Set Aside 2.

On September 7, 2011, the Government issued a civil investigative demand,[4] seeking deposition testimony from Martha Green, the Director of Health Information Management for Kernan. Two weeks later, on September 22, the Government deposed Ms. Green at the United States Attorney's Office in Baltimore, Maryland. Based on the information obtained

---

not fully comply with the Government's production requests. *See* Pl.'s Opp. 5, ECF No. 34. Specifically, the Government maintains that "Kernan Hospital has never produced emails." *Id.*

[4] Section 3733 of the False Claims Act empowers an Attorney General or a designee, "before commencing a civil proceeding under § 3730(a) or other false claims law," to issue a "civil investigative demand." 31 U.S.C. § 3733(a)(1). The civil investigative demand requires a person who may be in possession of information relevant to a false claims investigation to produce that information in the form of documents, answers to written interrogatories, or oral testimony. *Id.*

from the three-year investigation into Kernan's alleged scheme of upcoding, the Government filed a False Claims Act suit as well as alleged breach of fiduciary duties, unjust enrichment, and payment under mistake of fact. *See* Compl. 19-24, ECF No. 1. Kernan filed two separate motions to dismiss, one based on the Government's failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Federal Rules"), and the other based on its failure to plead fraud with sufficient particularity pursuant to Rule 9(b) of the Federal Rules. *See* Mot. to Dismiss, ECF No. 6; Mot. to Dismiss, ECF No. 10. This Court granted Kernan's Motion to Dismiss all counts of the complaint, concluding that the Government had failed to adequately plead its fraud allegations, and dismissed the Government's complaint without prejudice.[5]

On August 23, 2012, the Government served Kernan with the civil investigative demand that is at issue in the pending petition. *See* Def.'s Ex. 11, ECF No. 29-11. This civil investigative demand requires Kernan to submit documents—including medical records, patient files, coding summary forms, and e-mail communications—regarding Kernan's coding practices and the coding of malnutrition as a secondary diagnosis. *Id.* Some of these requests are for documents during a period from January 1, 2004 to present, and others are

---

[5] *See* Mem. Op. 16-22. The disposition of this case is disputed by the parties. Kernan claims that in dismissing the Government's complaint, this Court, "though not required to do so, . . . granted leave for the government to file an amended complaint." Def.'s Pet. to Set Aside 3. The Government responds that in dismissing the complaint, this Court closed the case. Pl.'s Opp. 3. The case is closed, and this Court has not granted leave for the Government to amend its complaint. However, this Court dismissed the complaint without prejudice so that the Government would have an opportunity to plead the allegations of fraud with more particularity. *See* Mem. Op. 22 ("To state a claim under the Act in this case, the Government must describe *what* false statements were submitted to the government, and more importantly, *how* those submissions affected the hospital's reimbursement." (emphasis in original)).

for documents during a period from January 1, 2005 to present. *Id.* This most recent civil investigative demand mirrors, for the most part, the requests in the June 3, 2008 subpoena. *Id.* However, it does request some unique documents as well as seeks documents from an expanded time period.[6]

Kernan has petitioned this Court to set aside the most recent civil investigative demand, arguing that section 3733 of the False Claims Act allows the Government to issue a civil investigative demand only "before commencing a civil proceeding" under the False Claims Act. Because the Government already commenced a proceeding and the second civil investigative demand relates to the same proceeding, Kernan argues that the Government is without authority to issue the demand. The Government contends that section 3733 inherently deprives the Attorney General of the power to issue a civil investigative demand only if the suit is pending. Because this False Claims Act case is closed, the Government reasons, the parties are in the same positions as they were before suit. Thus the Government contends that it has the authority to issue the demand in its pursuit of evidence to overcome its earlier pleading deficiencies. It makes this contention after already having conducted a three-year investigation of Kernan's coding practices, which accumulated nearly 19,000 documents, and determining that it was prepared to bring suit against Kernan.

[6] Kernan contends that, aside from expanding the relevant time period to include the years 2004 and 2008 to present, the second civil investigative demand issued in August 2012 seeks the same documents as the June 3, 2008 subpoena. Def.'s Pet. to Set Aside 4. A review of the two civil investigative demands reveals that although most of the prefiling requests and the requests in the civil investigative demands are quite similar, the second civil investigative demand contains some unique requests. *See, e.g.*, Def.'s Ex. 11 at 6 ¶¶ 4-6, 9-10 (requesting, for example, documents relating to malnutrition as a secondary diagnosis from January 1, 2004 to present; documents relating to conversations between Kernan and HP3, Inc. or Navigant, Inc.; and documents relating to any audit of the Kernan query process).

## STANDARD OF REVIEW

Section 3733 empowers an Attorney General or a designee, "before commencing a civil proceeding under § 3730(a) or other false claims law," to issue a "civil investigative demand" requesting documents, responses to written interrogatories, or deposition testimony. 31 U.S.C. § 3733(a)(1). The civil investigative demand functions as a "prefiling information-gathering tool to perceive widespread fraud" against the government. *United States v. Witmer*, 835 F. Supp. 201, 206 (M.D. Pa. 1993), *order vacated in part on other grounds on reconsideration*, 835 F. Supp. 208 (M.D. Pa. 1993). This investigative tool provides the government "with a means to assess quickly, and at the least cost to the taxpayers or to the party from whom information is requested, whether grounds exist for initiating a false claim suit." *United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995).

The civil investigative demand provision was added to the False Claims Act in 1986 "as part of an extensive revision of the Act." *Avco Corp. v. U.S. Dep't of Justice*, 884 F.2d 621, 622 (D.C. Cir. 1989). In particular, section 3733 was included to remedy the "serious roadblocks to obtaining information as well as weaknesses in [investigative tools]," including the government's limited investigative resources and the fact that civil attorneys "have no authority to compel production of documents or depositions prior to filing suit." S. Rep. No. 99-345, at 3-6 (1986). In one of the few cases to examine the workings of section 3733, the United States Court of Appeals for the D.C. Circuit remarked that "it is evident to anyone reading the statute . . . that the Attorney General may not employ the power granted by this section after he has commenced a false claims action." *Avco Corp.*, 884 F.2d at 623.

ANALYSIS

The crux of this dispute concerns the statutory limitations on the False Claims Act's civil investigative demand, 31 U.S.C. § 3733. In its petition, Kernan argues that because the Government already commenced a False Claims Act suit, basing its allegations on information discovered during a three-year investigation of the hospital's coding practices, the Government cannot now issue a civil investigative demand. The Government disputes Kernan's petition, contending that it has renewed authority to issue a civil investigative demand because this Court dismissed the Government's complaint without prejudice and closed the case.

There is little case law construing the metes and bounds of the False Claims Act's civil investigative demand. The case that comes closest to addressing the issue before this Court is *Avco Corporation v. United States*, in which the Court of Appeals for the D.C. Circuit decided that the filing of a qui tam complaint did not preclude the Attorney General from issuing a civil investigative demand. 884 F.2d 621. In *Avco*, a relator brought a quit tam action against Avco Corporation, alleging violations of the False Claims Act. *Id.* at 622. After receiving a copy of the qui tam complaint, the Attorney General initiated his own investigation and issued a civil investigative demand on an Avco employee with knowledge of Avco's work for the United States Coast Guard. *Id.* at 622-23. The employee filed a petition to set aside the civil investigative demand, arguing that the relator's filing of a qui tam proceeding "cut off the power of the Attorney General" to issue a civil investigative demand. *Id.* at 623. Relying on the plain meaning of section 3733, the Court of Appeals found that the Attorney General's power to issue a civil investigative demand was

circumscribed only by his own intervention in a False Claims Act suit. *Id.* at 623-24. "It is evident to anyone reading the statute," the court stated, "that the Attorney General may not employ the power granted by [section 3733] after he has commenced a false claims action." *Id.* at 623.

The D.C. Circuit's opinion in *Avco* does not touch on the issue presented to this Court: whether the Government can issue a civil investigative demand after having initiated an investigation into possible False Claims Act violations and filed suit on the basis of that investigation. Section 3733 sets out a prefiling limitation on the use of the civil investigative demand, yet neither the statute nor the case law interpreting it suggests whether that limitation expires after an initial complaint is dismissed. Indeed, the Government in this case acknowledges that there is no case law or authority addressing the issue before this Court. Pl.'s Opp. 5.

The Government, however, advances two reasons why this Court should deny Kernan's petition. First, the Government argues that section 3733 inherently deprives the Attorney General of the power to issue a civil investigative demand only if a suit is pending. Pl.'s Opp. 3. This reading of the statute relies on the Government's understanding of the disposition of this case. Because its complaint was dismissed without prejudice and the case was closed, the Government argues that the two parties are put "in the same position as though [a] suit had not been filed." *Id.* at 3-4. To bolster this point the Government cites *McLean v. United States*, 566 F.3d 391 (4th Cir. 2009). In *McLean*, the Court of Appeals for the Fourth Circuit found, in the context of determining a prisoner's eligibility for in forma pauperis status, that a "dismissal without prejudice for failure to state a claim is not an

adjudication on the merits . . . and 'permits a plaintiff to refile the complaint as though it had never been filed.'" 566 F.3d at 396 (internal citations omitted). Thus, in the absence of a pending suit the Government argues that it wields the same authority it had before commencing a civil proceeding against Kernan.

Because the Government's argument turns on the meaning of the statute, this Court must apply the well settled canons of statutory interpretation. The starting point for interpreting a statute is "the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). "[R]esort may be had to legislative history" where the statute's language is ambiguous or the ordinary meaning would lead to an absurd or futile result. *Avco Corp.*, 884 F.2d at 625 (internal citation omitted). The Government suggests that section 3733 contains a second-order limitation—the prefiling limitation itself is limited, the Government proposes, to the period during which a suit is pending. Though the Government maintains that this limitation is "inherent" in the statute, Pl.'s Opp. 3, this Court finds that the Government's argument is unavailing.

Looking first to the plain meaning of the statute, this Court does not detect an inherent limitation on section 3733 that would grant the Government power to issue a civil investigative demand at this stage. Section 3733 grants an Attorney General or a designee the power to issue a civil investigative demand "before commencing a civil proceeding under § 3730(a) or other false claims law." 31 U.S.C. § 3733(a)(1). As the D.C. Circuit found in *Avco*, "it is evident to anyone reading the statute . . . that the Attorney General may not employ the power granted by this section after he has commenced a false claims action." 884 F.2d at 623. However, an examination of the plain words of the statute does not invite

an interpretation of "before commencing a civil proceeding" to include the period after the commencement of a civil proceeding when no suit is pending, and the Government does not propose how section 3733 could be read in such a way.

Because the plain meaning of section 3733 does not speak to the issue presented in this case, this Court finds that the statute is ambiguous on the issue. Thus, this Court may refer to the legislative history to determine if there is some period after the commencement of a False Claims Act proceeding when the Government could, in keeping with section 3733, issue a civil investigative demand. *See Avco Corp.*, 884 F.2d at 625 ("[R]esort may be had to legislative history when a statute is ambiguous." (internal citation omitted)). Indeed, the legislative history, which includes both the Senate Report on the False Claims Amendments Act of 1986 ("Senate Report") and the corresponding report from the House of Representatives ("House Report"), is helpful in this case. In designing a civil investigative demand for the False Claims Act, the Senate Report describes that Congress aimed to remedy the Government's "inadequate investigative tools." S. Rep. No. 99-345, at 4. In particular, the Senate recognized that "some cases are weeded out and not filed because information is missing—information that might have turned up through pre-suit investigation if the tools were available." *Id.* The House Report echoes the Senate Report's concern that without a prefiling subpoena power the Government was unable to properly assess whether to commence a case under the False Claims Act:

> Currently, the Government must make a determination whether to file a civil fraud case based on sketchy information. Often, the Government files a suit and institutes discovery and only then discovers that there is not enough evidence to pursue the case. The Committee determined that the use of [civil investigative demands] would enable the Government to determine whether

> enough evidence existed to warrant the expense of filing suit, as well as to prevent the potential defendant from being dragged into court unnecessarily.

H.R. Rep. No. 99-660, at 26 (1986). This legislative history suggests that when Congress circumscribed the period during which the Government could issue a civil investigative demand to the prefiling stage, it did not mean to provide the Government with that power at any time a suit was not pending. At the prefiling stage, the Government is able to gather the information it needs "to determine whether enough evidence existed to warrant the expense of filing suit." *Id.* After the suit has been filed, the civil investigative demand no longer serves its purpose as expressed in the legislative history.

In this case, the Government conducted a three-year investigation of Kernan's coding practices and made use of section 3733's civil investigative demand before filing suit. This investigation provided the Government with nearly 19,000 documents to use in its False Claims Act complaint. An examination of the statute does not suggest, as the Government argues, that it has renewed power to issue a civil investigative demand at this stage. Rather, the plain meaning of the statute makes clear that the tool is to be used "before commencing a civil proceeding." 31 U.S.C. § 3733(a)(1). Moreover, the legislative history confirms that the civil investigative demand is a prefiling investigative tool that Congress created to aid the Government in deciding whether to file suit in the first place. The Government already determined that the False Claims Act suit against Kernan was worthwhile. For these reasons, this Court finds that the Government may no longer exercise the civil investigative demand power under section 3733 with respect to its allegations that Kernan engaged in fraud by upcoding secondary diagnoses concerning malnutrition.

The Government's second argument is based on policy. This Court granted Kernan's Motion to Dismiss for failure to plead fraud with particularity. That dismissal was without prejudice. Accordingly, based upon the exhaustive discovery already conducted, the Government may file an amended complaint claiming fraud, or perhaps breach of contract or negligence. The Government contends that the granting of the subject Motion to Set Aside Civil Investigative Demand would prevent it from obtaining the information it needs to cure pleading deficiencies. *See* Pl.'s Opp. 5. The Government argues that "Kernan Hospital cannot have it both ways." *Id.* At this stage of the proceeding, the information that the most recent civil investigative demand requests is needed, states the Government, to "plead[] a recognized claim with the requisite particularity." *Id.*

The problem with this argument, however, is that the Government is not, as it seems to suggest, stuck between a rock and a hard place. The Government conducted a lengthy investigation of Kernan's coding practices and decided after three years that it was prepared to file suit. During its investigation, the Government received nearly 19,000 pages of information as well as deposition testimony pursuant to a civil investigative demand and several document requests. This Court is not persuaded that the Government needs to exercise its section 3733 power before it can sufficiently amend its complaint. Rather, the circumstances of this case suggest that the Government conducted a thorough investigation and gathered the information it needed to determine whether to file suit. The length and depth of the investigation, along with the fact that the Government's recent civil investigative demand seeks documents within the same universe of information it already

had the opportunity to access, reveals that the Government took full advantage of its section 3733 power in preparation for filing suit.

It is worth stressing the sheer volume of documents that the Government procured during its prefiling investigation of Kernan and the opportunity the Government now has to amend its first complaint. Through various subpoenas, the Government received 100 specifically identified medical records; documents relating to the coding of malnutrition as a secondary diagnosis, including patient records, physician queries, employee files, and training records; and deposition testimony from Kernan's Director of Health Information Management. Except for the Government's claim in its Opposition to Kernan's Petition to Set Aside Civil Investigative Demand that Kernan has "never produced emails," the Government does not address any additional information requested. *See* Pl.'s Opp. 5. On the contrary, the fact that the investigation resulted in nearly 19,000 documents suggests that Kernan made a good faith effort to comply with the Government's many prefiling requests.

If, despite the volume of material provided to it in discovery, the Government still finds itself unable to plead the alleged fraudulent scheme with particularity, it has other options. The Government certainly has the opportunity to bring a claim for alleged contractual overbilling based on the underlying facts of this case. However, to the extent that the Government chooses to continue to pursue a fraud claim, it must satisfy Rule 9(b)'s heightened pleading standard. As this Court explained in its previous Memorandum Opinion, "Rule 9(b)'s directive that 'the circumstances constituting fraud or mistake shall be stated with particularity' does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief

that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." Mem. Op. 20 (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). The Government's first complaint failed to allege with particularity the crucial circumstances of the alleged fraudulent scheme. The Government has been given the opportunity to amend its complaint if it so chooses, but this opportunity does not grant the Government the right to rehash the prefiling investigation that it conducted for over three years.

It is also important to consider the potential damage this False Claims Act suit has caused to Kernan's goodwill and reputation. Both the civil investigative demand provision and Rule 9(b) of the Federal Rules are intended to encourage careful behavior when alleging fraudulent conduct. The Senate Report emphasized that the civil investigative demand is a tool to be used by "the responsible Assistant Attorney General." S. Rep. No. 99-345, at 24. The House Report envisioned that the civil investigative demand would prevent unnecessary lawsuits and be used "[not] in every potential civil fraud case, but only in those instances where it is absolutely necessary to determine whether a fraud action under the Act is appropriate." H.R. Rep. No. 99-660, at 26. Likewise, one of the purposes of Rule 9(b) is to protect "defendants from harm to their goodwill and reputation." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Thus this Court finds that construing section 3733 to prevent the Government from filing a civil investigation demand at this stage is in keeping with the policy goals underlying both section 3733 and Rule 9(b). Accordingly, this Court grants Kernan's petition to set aside the Government's civil investigative demand, which the Government issued after commencing its False Claims Act suit.

CONCLUSION

For the reasons stated above, Defendant Kernan Hospital's Petition to Set Aside Civil Investigative Demand (ECF No. 29) is GRANTED.

A separate Order follows.

Dated: November 20, 2012 /s/

Richard D. Bennett
United States District Judge